at all. At this time, would counsel for the appellant please introduce herself on the record to begin. Good morning and may it please the court, Lauren Zurier on behalf of the United States. Judge Rittleman, may I please have two minutes for rebuttal? You may. Thank you. The district court in this case erred in suppressing the evidence that resulted from execution of the five phones and the gray CSLI-1 because the district court misinterpreted U.S. v. Sheehan and also misapplied the doctrine of systemic negligence. I'd like to address each of those issues in light of a few key points on this record. First, the USAO's clerical errors in this case were unintentional. There's no dispute about that. Second, but for the most part, there was ample evidence of probable cause in each of the two warrant application packets, or there would have been had the exhibits been attached. Third, the exhibits that were omitted were explicitly incorporated by reference using suitable language of incorporation. Fourth, it was reasonable for the agent to assume that the packets had been submitted as he knew that the magistrate judges for both warrants were familiar with the exhibits that were supposed to have been submitted. Certainly with respect to the five phones warrant, the arrest warrants had been issued the day before based on one of those missing exhibits, exhibit B. With respect to the CSLI warrant, this was the third warrant for the same information and only sought to correct an IMSI number. When the agent got the warrant packets, warrants back from the court, he had no reason to think that the warrants hadn't been issued based on exactly what he anticipated was submitted. No one knew about the errors in this case until a year after the second one occurred and two years after the first one occurred. So, why is Sheehan not appropriate in this case? In Sheehan, the court makes its good faith analysis turn solely on its probable cause analysis. In other words, it conflates the two issues. It takes the concept of probable cause and also does the same analysis for good faith without considering any of the other surrounding circumstances. But when you look at the facts in Sheehan, you realize why this case isn't a good, Sheehan is not a good framework for this case to be decided under. In Sheehan, probable cause was lacking because of the decisions in providing an insufficient quantum of evidence. She didn't try to attach other exhibits using suitable words of incorporation. She never intended for the district court in Sheehan or the state magistrate to consider anything other than what she put in the affidavit submitted with the rest of the warrant packet. And in fact, in Sheehan, this court noted that it would have been unreasonable for that detective to rely on exhibits out that weren't attached because she didn't use precisely the words of incorporation that were used here. Counsel, I think you make good points that the facts of Sheehan are quite different from the facts here, but I believe you conceded below that at least for the five phones warrant, what was included with the warrant application was not sufficient to show probable cause without the exhibits. Correct? Yes, but that's the distinction. Because in Sheehan, what was submitted for probable cause was also the only thing. No, I understand, but in terms of what the magistrate actually had when the warrant was issued, it was not that the application was not sufficient to show probable cause. The application was not sufficient to show probable cause. And I believe that the what was sent back to the agent should have made it clear that the exhibits had not been attached in the warrant application. And given, you know, the various factors under Leon, one of which is if you have a warrant that it's clear it was issued, you know, it's bare bones affidavit, it's clear the warrant is issued not on probable cause, that is one of the reasons why the good faith defense can be denied. So can you comment on that, sort of putting Sheehan to the side? In Massachusetts v. Shepard, the Supreme Court rejected a similar argument. In that case, the defendant argued that the officer should have checked the warrant packet when it came back from the court because he was aware that the original documents submitted to the court were irregular in the kind of papers that had been submitted and should have checked to see if all the documents were correct. So the defense argued that when you get a warrant packet from the magistrate, you're getting the assurance that the magistrate had reviewed that warrant, unless there's any other reason to think that something had gone awry, the officer shouldn't be second-guessing the work of the magistrate. Now, so, too, here. The officer had no reason not to think that a fulsome presentation of probable cause had not gotten to the magistrate. And, in fact, the magistrate had all that information from reviewing exhibits the day before, a few days before, was very familiar with the case. So are you really relying on the fact that it's the same magistrate? Is that critical? And if that were not the case here, would you not be making that argument? Well, certainly that's a critical distinction between this case and Sheehan. In this case, the magistrate did know, we know that she did, because she signed off on it 24 hours earlier. So in terms of whether the defendant's Fourth Amendment rights were violated with a sort of deliberate conduct that typically applies when, typically is at issue when good faith doesn't apply, that didn't occur here. And I would note that of the scenarios under Leon where good faith does not apply, all of them involved deliberate, reckless, or grossly negligent conduct, whether it's a facially deficient warrant, whether it's the bare-bones affidavit. But it was a facially deficient warrant here. I mean, I think that's the argument of Mr. Medina. There was just not enough information without the exhibits. Facially deficient warrants actually go to the particularity of the warrant, Your Honor. Or a bare-bones affidavit. In any case, this was a warrant that clearly did not get issued based on probable cause. If you look at the Supreme Court's case law on bare-bones affidavits, it's much different than what the affidavit that was presented here. In a bare-bones affidavit, there's very little more than just the unsupported suspicion of the officer that a crime has occurred. Please issue a warrant. And that's made clear in the Morton case, which goes through a number of Supreme Court cases involving bare-bones warrants. There's repeated references to the arrest warrants that had issued the day before. The magistrate would have known that probable cause had been issued for these defendants for drug trafficking. That's why they were arrested. And now the government was seeking to search the phones that they had with them at the time they were arrested. That's far from nothing. And even if it didn't approach, even if it didn't by itself represent probable cause, it would have been probable cause. It certainly was far more than bare-bones. And I also think that the bare-bones analysis in Sheehan just isn't directly applicable to this case because of the factual distinctions. What about the ultimate? Go ahead, Judge Selye. Missouria, what obligation, if any, do you think the affidavit, the officer who presented the warrant application, had to make certain that the documents that she had directed be incorporated were in fact incorporated? No responsibility? On these facts, I think that there was no reason for her not to believe that the USAO would not follow through and attach, as had been arranged and had been the practice. It's a different situation if there had been notice and there had been a pattern of knowing violations, then the officer would have a reason to check again. But there's always a situation. But your fallback rule was blind faith. Not blind faith. If I don't have reason to suspect that my instructions weren't carried out, I don't have to check to see that they were carried out. No service is complete unless you find out that the document wasn't received. At some point in every process that involves more than one person, there's going to be a point where you have to let it go. And in this case, in post hoc analysis, changes have been made to ensure that the mistakes don't happen again. But at the time, this was the consistent pattern of the consistent practice of the US attorney's office in multiple cases without an issue. So I don't think it's reasonable to fault the agent for what he did at the time, when at the time is the legal standard this court has to apply in making a good faith decision. At what point, if any, did the warrant become three-dimensional, tangible paper as opposed to electronic? I think in this case, everything was electronic. My understanding from the record is that the packet was sent back to the USIO who forwarded it to the agent. The agent then forwarded, as is again practice, the warrant plus the attachment A and attachment B, which directs what has to be searched and seized. And that's all that's provided. There was no particular reason to keep going through that packet. So it was a single PDF is what was submitted? I believe so, Your Honor. And it always remained in that form as opposed to hard copy form? Our office is pretty much paperless, yeah. Counsel, what about the alternative finding of the district court, that there was a systemic problem here because there were multiple times in just one case where all the information that was needed was not presented to the magistrate judges? Well, first, in denying the motion for reconsideration, the district court said there were two instances that were relevant. Two instances impacting the Fourth Amendment. But two in one case. Two in one case, separated by a year, separated by 30 complete warrants, certainly with respect to the five phones warrant, there was nothing before that. So I don't see at that point, you can't lump them together and suppress them both based on systemic negligence when at the time the first warrant issued, there had been no pattern, there was no system, there was nothing prior to that. So that's not my understanding of how a system or recurrent negligent pattern works. But more importantly, systemic negligence requires two things, not in this case. First, the conduct of the person making the state needs to have a level of culpability, which is not in this case. Herring talks about if the police had been shown to be reckless in maintaining a warrant system or to have knowingly made false entries to lay the groundwork for future false arrests. I don't read the case law that way. I think I read the case law to say you can have reckless or knowing conduct or systemic negligence. It doesn't need to be reckless. Well, when Herring actually, the language that Herring uses for talking about systemic errors is this, at page 146 of 555 United States. In a case where systemic errors were demonstrated, it might be unreasonable for officers to rely on an unreliable warrant system. That presupposes the officers knew the warrant system was unreliable. How could it be unreasonable for them to rely on something where they had no idea that it had errors built into it? So I think that systemic, and if you look at the systemic negligence cases cited and including the ones cited by the defense, they all involve reckless, knowing, grossly negligent conduct. None of that is here. There wasn't the knowledge necessary where someone acts at their peril because they know or have reason to know that mistakes are being made. And that's another reason why this court should reverse. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Please, the court. My name is James Richard Radcliffe. I'm here representing the three appellees. So as this court is aware, the five cones and the CSI warrants lack sworn testimony. I'm back supporting probable cause. I believe that's a good recommendation, pointing that out. The affidavits were presented, but the affidavits referenced within the affidavits were not. Although they were prepared by Inspector Atwood, and he didn't submit them, they weren't submitted to the court. With respect to Judge Payada's question, I don't believe there's any record as to what happened here, and that's one of the things that we actually raise in our brief. There was no evidentiary hearing. There was no testimony of Inspector Atwood as to what exactly he did. There was an affidavit of Jay Brennan, which is in the appendix. It's actually in the sealed appendix. And all that's in there is that Jay Brennan said, this was our procedure, and that I followed the procedure. So we don't really know how it happened, but the thing that we really want to point out here is that it's the affiant's responsibility, and that's what's really pointed out in the cases. When an affiant submits a warrant to the court, it has to be based on an affidavit with sworn facts to establish probable cause. In this case, on two instances, Inspector Atwood submitted affidavits referencing other affidavits, but they were not attached. And that goes, as Judge Selya said, and she had, that goes to the core competency of a police officer. It doesn't really matter from the point of view of what goes to the magistrate, whether or not it was an affidavit, whether or not it was, like in Sheehan, an intentional decision to not include information regarding the alleged child pornography, or in this case, where you say, I'm attaching exhibits A and B. As we point out in our brief, he could have put everything in one affidavit. He chose to proceed this way. That's what he did. Counsel, and I think I read this in your brief, and it seems like it's the case based on the questions that we just heard. When the inspector received the materials back, it should have been clear from the PDF that the key attachments weren't there. In other words, that what had been provided to the magistrate judge lacked, was missing the key facts. Yes, yes. When he received the PDF back, and we don't know, I mean, he had to print something out to conduct the search. It had to be something that was printed out. I mean, the two affidavits take up quite a bit of space. I mean, just looking at it, and if you... When you say looking at it, what do you mean? If you printed it out, for example. Are you saying it was printed out? We don't know, Your Honor. We don't know, there's no record. I believe that it was one of the signature lines, I believe, on the five phones warrants 274. It's hard to say. There was a reference made that it was electronically signed, but I don't believe it says it actually on the warrant itself. But it would be missing from the PDF, am I wrong? What is not in the PDF file sent to the inspector are Exhibits A and Exhibits B. So if you open the PDF, it will be obvious that they're not there. Correct. And it's not clear what Inspector Atwood had in front of him when he met with the magistrate remotely. Well, when you open a PDF, the volume and bulk of the PDF is generally not immediately observable in the same way that a hard copy is. That is correct, Your Honor. It's not observable when you open it up, but it's his response. If you thumb through it all, you'll see how many pages there are and what's there and what's not there. Yes, and when you open it up, oftentimes, at least, again, we're getting into when I open a PDF, I often click the box on the other side so I can see if I'm going to refer to something. If I'm going to be meeting with the magistrate judge, you would think that he would open it up and if he's looking at it, and we don't know what he was looking at, one would assume he was looking at what was submitted to the court. You open it up and you click and you can see that you can reference everything in your affidavit. So your affidavit is in front of you. So if there's any questions from the magistrate judge, you have your affidavit in front of you so that you can answer the questions. So what are we deterring here? I mean, at base, what we're doing is we're trying to balance deterring improper law enforcement behavior without overshooting the mark and punishing the public by excluding evidence of crime. And here you've got an officer who thought it was attached. If it had been attached, it clearly was established probable cause and he knew that the magistrate had seen it before and the magistrate had in fact seen it before, but there's a goof up. It doesn't get attached. Why would we want to deter that sort of behavior? What bad faith are we getting at here? In answering your question, Judge Kayada, first I want to point out, I don't think we get to that in this case based on Sheehan because we're dealing with the core competency of Inspector Atwood, the core competency of a police officer. And when you look at Leon, you have a situation where that is one of the four exceptions to the good faith rule where the warrant is based on an affidavit that is so lacking in probable cause. As Judge Rickleman pointed out, there was, in this case, the government concedes. The warrant itself does not establish probable cause for the search of the five S.L.I. warrant. But if you're a reasonable officer who got the warrant and believed it's what you submitted and what you submitted contains the attachment, you would reasonably conclude it is sufficient. So it requires us to sort of hone in on exactly what the test is we're thinking. Are we saying it's facially insufficient if every page is read or are we saying it's facially insufficient if received by and looked at by a reasonable officer who might not read every single page to notice that page 27 got garbled by the printer or something? What we're saying, Your Honor, is that the core competency of, I mean, we're dealing with the Fourth Amendment here, a constitutional right. We're not dealing with a ministerial act. He is presenting, this is a, you know, there may have been 30 warrants in this case, but this is a very solemn occasion. He is going to a magistrate judge in the federal court and saying, give me a warrant so that I can search five cell phones. As Your Honors all know, and Riley and these other cases, the amount of information that's on those cell phones, we're talking about a very serious search here. He's going to a magistrate judge and he's saying, I have probable cause. He better make, he has an obligation to make sure what goes to the magistrate judge establishes probable cause. That's what Leon says. You don't get good faith to that. So I think you're saying in every case, every officer upon receipt of the warrant authorized by a magistrate, the officer must read the entire warrant and all attachments to it. What I'm saying, Your Honor, is if an officer, like Inspector Atwood in this case, chooses to reference other affidavits in his affidavit, he has an obligation to make sure that it's attached. That's another way of saying that he has no right to rely on administrative personnel to do the attachment. That is correct, Your Honor. You've said it better than I could have said it. What case says that? The core competency of the police officer in Sheehan was because the police officer herself had undertaken to put the warrant together. Here we have an officer who has directed the preparation of the warrant and specified that certain attachments would be made by the USAO personnel. So the question is, does he exclude himself from good faith because he doesn't then check to make sure that despite a record of apparently smooth operation under this paradigm for some time, that on this occasion the USAO personnel have let him down and not done what they were instructed to do? Well, Your Honor, again, we don't have a record in this case, so we don't really know that it's worked well up until this time. Is there any example other than what happened in this case? Well, we know in this case, and the government says, okay, there's only two instances, but we believe there are six instances of negligence in this case because the negligence is the failure to attach the information. If you're going to use an affidavit that incorporates another affidavit, the negligence is not incorporating that affidavit. So in one case, with respect to Inspector Atwood, there were six times that he said to the magistrate judge, as stated in Exhibit A, A, B, C, D, and Exhibit A was not attached. With respect to the cost-benefit balancing, the cost-benefit balancing in this case is the there has to be some, there's got to be some way for the court to ensure that what goes to the appendix A, I have appendix A there, and it's not there, that that is, you have to make sure that what you say something is going there, that it goes, and that you have to make sure what goes to the magistrate judge, that the information in the affidavit establishes probable cause. Counsel, really what you're saying is since the whole point is that you have a neutral judicial officer decide whether there's probable cause, it is a pretty big systemic problem if information isn't getting to the magistrate to make that decision, that neutral decision. Can I ask you, the PDF, I know this is a very small point, and I don't have my appendix with me, but when I looked at the actual application without the key exhibits, it's quite short, isn't it? Isn't it only about ten pages? I mean, this wouldn't have been a large PDF file. Am I wrong about that? Yes, you are correct, Your Honor. It's fairly short. If you attach the other two affidavits, I believe, I set the record below when we were arguing before Judge McConnell, I believe we said that it was approximately 40 pages. With the attachments. With the attachments. And without it, it's about ten pages, right? Correct, Your Honor. Any further questions? Judge Salia, any further questions? None. Thank you, Counsel. No further questions. Thank you very much, Your Honor. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce herself on the record? She has a two-minute rebuttal. May it please the Court, Lauren Zurier for the Government. Two quick points, Your Honor. First, there were not six instances of missing exhibits. The District Court found there were only two. So for the other four instances that my brother is referring to are exhibits that were background. They weren't, there was no intention to present them to the magistrate for purposes of probable cause. There was no Fourth Amendment violation with those four instances because, I mean, the defendants themselves didn't even move to suppress on those four warrants. And in any case, all four of those happened after the five phone. So at least as to the five phone, there was no errors prior to that. The other point I want to make is about deterrence. Judge Kayada talked about overshooting the mark. If good faith doesn't apply to unintentional mistakes of the sort that arose here, I don't know what it does apply to. There's no behavior sufficiently culpable that it is worth the price this case will pay and the inability to prosecute a very serious drug trafficking and kidnapping case, something that the judge below refused to consider, but something which Herring and its progeny say must be considered. And for those reasons, I think that this Court should reverse. Thank you very much.